# Madonna v. Harley-Davidson Inc.

C.P. of Montgomery County, no. 92-11647.

*Paul J. Drucker,* for plaintiff Madonna.
*Jerome Gamburg,* for plaintiff Wilson.
*Robertson B. Taylor,* for defendant Harley Davidson.

LOWE, *J.,* March 25, 1997—This court issues this memorandum to apprise the parties of the rationale for the order below, denying the post-trial motions of plaintiffs Charles A. Madonna and Dolores M. Wilson.

## FACTS

Plaintiffs sued defendants in strict liability under section 402A of the Restatement (Second) of Torts, for damages stemming from an accident that occurred while they were riding a motorcycle manufactured by defendant Harley-Davidson Inc. The case was tried before a jury, which returned a verdict in favor of defendants against both plaintiffs. Plaintiffs filed separate post-trial motions. Madonna's motion raises the issue of whether this court erred by admitting evidence regarding his intoxication at the time of the accident. Wilson's motion joins in the issue raised by Madonna, and presents the additional issue of whether this court erred by instructing the jury to presume Madonna was intoxicated based on the fact that his blood alcohol content exceeded 0.10 percent.

Madonna and Wilson attended a picnic on the afternoon of June 10, 1990, in Upper Providence Township. They left the picnic on Madonna's Harley-Davidson motorcycle. After traveling less than one and one-half blocks, the motorcycle and its passengers collided with a guardrail, causing bodily injury to the plaintiffs.

Plaintiffs and defendants agreed the upper mounting bolt on the brake caliper of the front wheel of the motorcycle was defective, and that this defect could cause the driver to lose control of the motorcycle. Plaintiffs claim this defect was the sole cause of the accident. Defendants, on the other hand, contend the defective bolt was working properly, and that the collision was due entirely to the operator's error. To support this claim, defendants offered evidence that Madonna was intoxicated at the time of the accident. This evidence included testimony from a paramedic and a police officer, both of whom smelled the odor of alcoholic beverage on Madonna's breath. A second paramedic testified Madonna told him he drank beer earlier that day. The police officer ordered Hahnemann Hospital to perform a blood alcohol test on Madonna several hours after the accident. An expert witness for the defendants testified to a reasonable degree of medical certainty that, based on the results of the blood alcohol test, Madonna was intoxicated at the time of the accident.

After the parties presented their cases, this court instructed the jury, in pertinent part:

"Point number seven is affirmed as slightly modified. Harley-Davidson has presented evidence that Madonna was intoxicated at the time of the accident and that his intoxication impaired his ability to safely operate the motorcycle. If you are satisfied that Madonna was alcohol-impaired and the cause of the accident—the

only cause of the accident, you must return a verdict in favor of Harley-Davidson.

"Well, that's true, members of the jury. In Pennsylvania, anyone whose alcoholic reading of blood is 0.10 or above is deemed to be intoxicated. And you heard a witness testify that Madonna's blood alcohol reading was 0.14; therefore, under the law, he is deemed to be intoxicated." N.T. January 29, 1997 at 30-31. This court then gave a supplemental jury charge at the request of Wilson's attorney:

"You will recall that I earlier informed you that if a reading was 0.10 or above, as far as blood alcohol content is concerned, that you were under the influence. And I still say that. But counsel has asked me to again inform you that even if the reading is above that level, as it was in this case at 0.14, that it must still be proven that the defect in the vehicle was a substantial factor in bringing about the harm that the plaintiff suffered." *Id.* at 37. Neither of the plaintiffs' attorneys objected to the supplemental charge. *Id.*

## DISCUSSION

### A. *Admissibility of Evidence Relating to Madonna's Intoxication*

Madonna frames the issue in his post-trial motion as whether this court erred in admitting evidence regarding comparative negligence on his part. However, the evidence admitted at trial shows that the accident was caused either by a defect in the motorcycle or operator error. The record does not support the view that a defect and operator error jointly caused the accident. Therefore, the issue actually presented is whether this court erred by admitting evidence regarding the

plaintiff's intoxication, in order to disprove any causal nexus between the accident and the defective product.[1]

The Pennsylvania Superior Court has ruled that a trial court may do so. *Gallagher v. Ing,* 367 Pa. Super. 346, 532 A.2d 1179 (1987). In *Gallagher,* the plaintiff's decedent died when his automobile went out of control and collided with an oncoming car. *Id.* at 349, 532 A.2d at 1180-81. The plaintiff sued the manufacturer of the decedent's automobile, claiming that a design defect caused the decedent to lose control of the car. *Id.* at 349, 532 A.2d at 1181. The defendants claimed the decedent lost control of the car due to operator error, and offered evidence at trial that the decedent had been drinking prior to the accident, and that his blood alcohol content at the time of the accident was 0.18 percent. *Id.* A trial by jury resulted in a defense verdict, after which the plaintiff appealed, claiming the trial court erred in admitting evidence regarding the decedent's intoxication. *Id.* at 349-50, 532 A.2d at 1181.

On appeal, the Superior Court addressed the long-standing rule that, because of its prejudicial nature, proof of intoxication is not admissible to prove a person was reckless or careless in driving an automobile unless it reasonably establishes a degree of intoxication that proves the plaintiff was unfit to drive. *Id.* at 350, 532

---

1. Three cases cited in Madonna's brief, *Kimco Development Corp. v. Michael D's Carpet Outlets,* 536 Pa. 1, 637 A.2d 603 (1993); *Childers v. Powerline Equipment Rentals Inc.,* 452 Pa. Super. 94, 681 A.2d 201 (1996), and *Dillinger v. Caterpillar Inc.,* 959 F.2d 430 (3d Cir. 1992), address the issue of whether a trial court may admit evidence of a plaintiff's comparative negligence in a strict liability action. Consequently, these cases are irrelevant to the issue presented by his post-trial motion.

A.2d at 1181. The court cited cases that suggest that a BAC of 0.10 percent or greater, by itself, does not reasonably establish the requisite degree of intoxication to prove the plaintiff was unfit to drive. *Id.* at 351, 532 A.2d at 1182. The court then stated that additional evidence, such as expert testimony relating the results of the blood alcohol test to one's fitness to drive, and lay testimony suggesting the driver was intoxicated, may render BAC evidence admissible. *Id.* at 353, 532 A.2d at 1183. The court noted that testimony at trial showed the decedent had been drinking scotch for one and one-half hours before driving, that he had been seen driving at a high rate of speed on a narrow, winding road only one mile before the site of his accident, and that a toxicological expert testified to a reasonable degree of scientific certainty that the decedent's BAC indicated he was unfit to drive at the time of the accident. *Id.* at 351-52, 532 A.2d at 1182. Based on this evidence, the court ruled that the trial court did not err in admitting evidence of the decedent's intoxication to prove that the accident was caused by operator error rather than a design defect in the defendant's product.

The Superior Court recently reached the same result in *Surowiec v. General Motors Corp.,* 448 Pa. Super. 510, 672 A.2d 333 (1996). In that case, the plaintiff sued the manufacturer of his automobile for damages arising from an accident he claimed was caused by a vehicle malfunction. *Id.* at 514, 672 A.2d at 335. The manufacturer elicited testimony from the plaintiff that he had consumed approximately one quart of beer within three and one-half hours of the accident, and that one and one-half hours after the accident, his BAC was 0.082 percent. *Id.* The trial court precluded the manufacturer from introducing the testimony of a toxi-

cologist who would have stated that the plaintiff's BAC at the time of the accident would have been 0.104 percent. *Id.* at 514-15, 672 A.2d at 335-36. The lower court then granted the defendant's motion for a new trial in order to enable the defendant to present the testimony of its toxicologist to prove operator error, rather than a vehicle malfunction, caused the accident. *Id.* at 517-18, 672 A.2d at 337. On appeal, the Superior Court ruled that in light of all of the evidence regarding intoxication, the trial court did not abuse its discretion in granting a new trial.[2] *Id.*

The case of *Whyte v. Robinson,* 421 Pa. Super. 33, 617 A.2d 380 (1992) provides an example of a case in which the defendant failed to provide sufficient evidence of intoxication to render such evidence admissible. In that case, the plaintiff was struck by defendant's automobile while standing on the highway. *Id.* at 36-37, 617 A.2d at 382. While the defendant testified he smelled the odor of alcoholic beverage on the plaintiff's breath at the scene of the accident, none of the other witnesses at the scene noticed such an odor. *Id.* at 40, 617 A.2d at 383. While the plaintiff's treating physician also noticed an odor of alcoholic beverage on the plaintiff's breath, the Superior Court ruled such testimony insufficient to prove the requisite degree of intoxication,

---

2. The Superior Court seemed to base its decision more on the plaintiffs' failure to prove that the product malfunctioned than the defendant's ability to meet the standard employed in *Gallagher.* The Superior Court opined that the lack of evidence proving a mechanical failure left the jury without evidence that would support an alternative conclusion, *i.e.,* that the accident occurred because the operator was intoxicated. *Id.* Despite the fact that the court's decision was strongly influenced by concerns over jury speculation, the opinion also cited the rule applied in *Gallagher. Id.* Therefore, *Surowiec* supports this court's evidentiary ruling in the instant case.

since three hours had elapsed between the accident and the examination. *Id.* The defendant's passengers testified that they knew the plaintiff, that they had seen him intoxicated on other occasions, and that he was acting in a similar manner at the scene of the accident. *Id.* at 40, 617 A.2d at 384. The Superior Court ruled that such lay opinion was unduly prejudicial, in light of the limited probative value it carried, due to the absence of more reliable indicia of intoxication. *Id.* at 41, 617 A.2d at 384. Consequently, the Superior Court remanded the case for a new trial.

In the instant case, the defendants produced two witnesses who smelled the odor of alcoholic beverages on Madonna's breath, one witness who heard Madonna tell him he had consumed beer before driving, and a toxicologist who testified Madonna's BAC test results indicated he was intoxicated at the time of the accident. In light of the cases discussed above, the evidence in addition to Madonna's BAC was sufficient to reasonably establish the requisite degree of intoxication to show he was unfit to drive. Hence, this court denies Madonna's motion for post-trial relief.

## B. *Propriety of the Jury Instruction Regarding the Presumption of Intoxication*

Plaintiff Wilson contends this court erred when it instructed the jury that Madonna's BAC in excess of 0.10 percent indicated he was intoxicated at the time of the accident. The Superior Court has ruled that a trial court may not instruct a jury to presume a plaintiff was intoxicated based on a BAC above 0.10 percent. *Ackerman v. Delcomico,* 336 Pa. Super. 569, 486 A.2d 410 (1984). As in *Ackerman,* the charge in this case instructed the jury to presume from the plaintiff's BAC that he was intoxicated at the time of the accident.

Nevertheless, Wilson's post-trial motion fails because she did not specifically object to the final instruction this court read to the jury.

In order to preserve such an issue for appeal, counsel must specifically object to a jury instruction. *Dilliplane v. Lehigh Valley Trust Co.,* 457 Pa. 255, 322 A.2d 114 (1974). When a court gives a supplemental charge, and trial counsel fails to specifically object to that instruction, counsel is deemed to have waived any objection to the supplemental charge. *DiSerafino v. Bucyrus-Erie Corp.,* 323 Pa. Super. 247, 470 A.2d 574 (1983). Applying these principles to this case, Wilson is deemed to have waived this issue. Therefore, the court denies Wilson's motion for post-trial relief.

### CONCLUSION

Upon consideration of the foregoing discussion, this court issues the order below.

### ORDER

And now, March 25, 1997, upon consideration of the post-trial motions filed by plaintiffs, and defendants' responses thereto, it is hereby ordered and decreed that the motions are denied.

